**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JESSE L. KOONTZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:08-CV-0399-M (BF)** |
| | § | **ECF** |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U.S.C. § 636(b).  This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Jesse L. Koontz ("Plaintiff") for disability insurance benefits (DIB) under Title II of the Social Security Act ("Act").  The Court considered Plaintiff's Brief, filed January 6, 2009, Defendant's Brief, filed March 6, 2009, and Plaintiff's Reply Brief, filed April 23, 2009.  The Court has reviewed the parties' evidence in connection with the pleadings, and hereby recommends that the District Court reverse the Commissioner's decision and remand the case for further proceedings.

**Background**

**Procedural History**

Plaintiff, Jesse L. Koontz ("Plaintiff") filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act on September 13, 1996.  (Tr. 88-91.)  His claim was denied initially by Notice dated January 27, 1997, and again by

Notice of reconsideration dated April 11, 1997.  (Tr. 69-78.)  Plaintiff requested a *de novo* administrative hearing.  (Tr. 79-80.)

Administrative Law Judge ("ALJ") Walter Orr conducted the administrative hearing in Dallas, Texas, on March 17, 1998. (Tr. 25-67, 83.)  Plaintiff appeared with his attorney, Scott Dye, and testified. (Tr. 27, 29-64.)  The ALJ called Joyce R. Shoop, M.S., to testify as a vocational expert ("VE").  (Tr. 64-67, 85-87.)

The ALJ subsequently issued his Notice of Decision - Unfavorable on June 22, 1998, finding Plaintiff "not disabled."  (Tr. 17-24.)  Plaintiff requested review of the ALJ's decision by the Appeals Council, submitting a supporting memorandum along with new evidence. (Tr. 8-12, 14-16.) The Appeals Council denied his request for review by Notice dated March 6, 2001.  (Tr. 5-7.)

Plaintiff then retained counsel to represent him on appeal.  Counsel sent a letter to the Appeals Council dated April 30, 2001, requesting a copy of the claim file and an extension of time within which to commence a civil action.  The Appeals Council did not respond.  Therefore, Plaintiff filed a civil action in the Eastern District of Texas.  (Tr. 352.)

In lieu of an answer, on June 11, 2002, the Commissioner filed Defendant's Motion to Remand pursuant to Sentence 6 of 42 U.S.C. §405(g) on grounds that the claim file could not be located.  (*Id.* at Docket No. 3.)  U.S. District Court Judge Leonard Davis granted the Commissioner's Motion by Order and Final Judgment entered concurrently on August 1, 2002. (*Id.* at Docket Nos. 7, 8.)

Almost two years later, on July 6, 2004, the Commissioner filed Defendant's Notice to Reinstate Case and Defendant's Original Answer.  (*Id.* at Docket Nos. 9, 10.)  The civil action was returned to the Court's active docket by order entered January 28, 2005.  (*Id.* at Docket No. 13. )

However, on April 25, 2005, the Commissioner filed another Motion to Remand pursuant to Sentence 6 of 42 U.S.C. §405(g) on grounds the transcript was incomplete. (*Id.* at Docket No. 16.)

Plaintiff objected on grounds that a Sentence 6 remand is inappropriate after the Commissioner has filed an answer and proffered his own Motion to Remand pursuant to Sentence 4 of 42 U.S.C. §405(g). (*Id.* at Docket No. 17.) Judge Davis remanded pursuant to Sentence 4 by Order and Final Judgment entered concurrently on September 6, 2005. (*Id.* at Docket Nos. 19, 20; Tr. 386-87.) The Appeals Council, in turn, issued its Order remanding Plaintiff's claim for a new administrative hearing on September 27, 2005. (Tr. 401-03.)

ALJ Orr eventually conducted the remand hearing in Dallas on January 10, 2007. (Tr. 372, 584-622.) Plaintiff appeared with counsel, but the ALJ did not allow him to testify again. (Tr. 586-87.) The ALJ called Stephen Eppstein, M.D., to testify as a medical expert ("ME") and Russell Bowden, M.Ed., to testify as a vocational expert ("VE"). (Tr. 353, 374, 384, 590-621.)

The ALJ issued his second Notice of Decision - Unfavorable on July 3, 2007. Plaintiff asserts that neither he nor his counsel received a copy of the decision until January 2008. (Tr. 17-24, 346-48.) Subsequently, Plaintiff requested an extension of time within which to commence a new civil action as permitted by 20 C.F.R. §404.984(d), which the Appeals Council granted by letter dated March 21, 2008. (Tr. 346-47, 344.) Plaintiff commenced the present civil action on March 7, 2008, again seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. §405(g).

## Statement of Facts

Plaintiff was born on February 15, 1951. (Tr. 88.) On January 1, 1992, his alleged onset date of disability, he was 40 years old. He was considered a "younger individual" throughout the

relevant period ending December 31, 1996, the date his insured status for DIB expired, i.e., his "date last insured" ("DLI").  (20 C.F.R. §404.1563(c); Tr. 88, 92, 353.)  Plaintiff is now 58 years old.

Plaintiff left school during his tenth grade year.  (Tr. 101.)  He has not earned a General Educational Development (GED) certificate or completed any other formal education.  (Tr. 30, 101.)  At age 20, he joined the Army and served two years from 1971 to 1973.  (Tr. 31.)  Soon after his discharge, he joined the Navy and served until December 1974, when he was medically discharged due to rheumatoid arthritis ("RA").  (Tr. 30, 543.)

In April 1994, the Department of Veteran's Affairs ("DVA") rated Plaintiff as totally disabled based on unemployability commencing December 3, 1993.  (Tr. 562-64.)  Total disability is considered to exist by the DVA when the veteran's service-connected disability is sufficient "to make it impossible for the average person to following (sic) gainful employment."  (Tr. 562.)  Plaintiff was rated at a 60% impairment due to systemic RA discovered while serving in the Navy and a 30% impairment for a right total knee replacement necessitated by the effects of RA, for a combined service-connected disability of 70%, which renders him unemployable.  (Tr. 564.)

The ALJ ruled at Step 1 of the sequential evaluation of disability under the Social Security Act that Plaintiff has not performed substantial gainful activity since his alleged onset date in January 1992.  (Tr. 356.)

As the Medical Officer on Plaintiff's Navy vessel described in 1974:

This patient does not complain or pester for medical help.  In his job, he is hardworking and cooperative and reliable.

(Tr. 555.)  True to the officer's assessment, Plaintiff worked for over ten years as a heavy equipment operator and truck driver despite his chronic RA.  (Tr. 93-94, 105-07.)  His work as a truck driver demanded medium exertion and constant use of the arms and hands.  (Tr. 605.)

4

The ALJ ruled at Step 2 of the sequential evaluation that Plaintiff suffers from "severe" RA, status-post right total knee replacement, and diabetes mellitus Type II with related peripheral neuropathy. (Tr. 356.)

Over the many years since being diagnosed with RA in 1974, Plaintiff has been treated with the steroid Prednisone, Gold therapy, the strong cancer drug Methotrexate, sulfasalazine for inflammation, and various non-steroidal anti-inflammatory medications. (Tr. 214-15, 228-29, 247, 252.) He has joint involvement in the fingers, wrists, shoulders, and elbows with diminished grip strength, elbow contracture, swelling, and finger nodules. (Tr. 182, 187, 204, 216, 228-29, 252, 521.) The disease also has attacked his left ankle, his feet, and his knees. (*Id.*) Plaintiff has had multiple surgeries including a left wrist synovectomy with carpal tunnel release; a right distal ulnar arthroplasty; and, as earlier noted, a right total knee replacement. (Tr. 143-159, 451-452, 543.) In 1993, nerve conduction studies confirmed that Plaintiff's diabetes had caused sensory peripheral neuropathy in his arms and hands. (Tr. 195.)

The ALJ relied on the testimony of ME Eppstein to hold at Step 3 of the sequential evaluation that Plaintiff's severe impairments, singly or in combination, did not meet or medically equal any presumptively disabling impairment described in the Listings of Impairments in Appendix 1 during his insured period. (Tr. 361-62, 593.) Before proceeding to Step 4, the ALJ further relied on the ME's testimony to rule that Plaintiff retained the following residual functional capacity ("RFC") during his insured period:

> Frequently and occasionally lift and/or carry up to 10 pounds; sit four to six hours in an eight-hour workday and up to two hours at a time; and stand and/or walk two to four hours in an eight-hour workday with standing up to one hour at a time. He requires a sit to stand option at two-hour intervals and a stand to sit option at one-hour intervals. He has the non-exertional limitations of **inability to perform fine motor skills (fingering) with either hand**; inability to balance; inability to climb

ladders, ropes, scaffolds, or stairs; inability to work in climate extremes of hot or cold; and inability to perform any work activity with his arms at or above shoulder level.   Additionally, he is restricted to only **occasional reaching**, occasional stooping, **occasional handling**, and occasional pronation of his hands and arms.

(Tr. 361-62) (emphasis added).

According to Social Security Ruling ("S.S.R.") 85-15, "fingering" involves picking, pinching, or otherwise working primarily with the fingers.  S.S.R. 85-15, 1985 WL 56857, at *7 (1985).  Fingering is required in "most unskilled sedentary jobs."  *Id.*  "Handling," which means seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, is an activity required in almost all jobs.  *Id.*  The ALJ accordingly described Plaintiff's remaining ability to perform all the tasks of even sedentary work as "impeded by additional limitations at all times under consideration."  (Tr. 369.)

The ALJ held at Step 4 that Plaintiff cannot perform any of his past relevant work.  (Tr. 366.) At Step 5, the ALJ found  that Plaintiff can still perform other work existing in the national economy.  Plaintiff does not contest the ALJ's findings at Steps 1, 2, 3, and 4 of the sequential evaluation.  His arguments focus on the ALJ's Step 5 finding.

## Issues Presented

Plaintiff contends that, because the VE's testimony is unreliable, the ALJ's Step 5 finding that Plaintiff can perform other work existing in the national economy is unsupported by substantial evidence.  In support of this contention Plaintiff claims that:

(1)     The VE testified that 15 sedentary Inspection and Quality Control occupations were within Plaintiff's limited residual functional capacity despite his inability to perform fingering activities or to perform handling activities more than occasionally.

(2)     The VE's testimony that sedentary unskilled Inspection and Quality Control occupations do not involve fingering and do not require handling more than occasionally conflicts with the descriptions of such occupations in the Dictionary of Occupational Titles.

(3)     The ALJ did not resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles before relying on the VE's testimony to support his Step 5 finding that Plaintiff is "not disabled."

(4)     The VE's testimony does not reflect a supporting basis for concluding that, contrary to the Dictionary of Occupational Titles information, Inspection and Quality Control occupations demand no fingering at all and handling only occasionally.

(5)     Reversal for payment of benefits, rather than remand, is the appropriate remedy in this case.

## Standard of Review

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits.  *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

7

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized.

8

*Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g).  Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett*, 67 F.3d at 564.  The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## <u>Analysis</u>

### Conflict between VE's Testimony and the DOT

Plaintiff contends that the VE's testimony is in direct conflict with the DOT's descriptions of the 15 "Inspection and Quality Control" occupations.  (Pl.'s Br. 11.)  The Court agrees.  A direct or obvious conflict may arise when the VE's testimony regarding the exertional or skill level of a particular job is facially different from that stated in the DOT or when the VE's testimony creates a conflict between the ALJ's determination regarding the claimant's RFC and the description of the jobs in the DOT.  *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

During the ALJ hearing, the VE testified that Plaintiff had the ability to perform 15 unskilled sedentary occupations in the category of "Inspection and Quality Control" because they did not require fine manipulation or fingering and only required occasional hand use.  (Tr. 603, 607-08, 610).  Specifically the VE identified six occupations: Dowel Inspector (DOT Title No. 669.687-014), Film Inspector (DOT Title No. 726.684-050),  Lens Inspector (DOT Title No. 716.687-030), Button Inspector (DOT Title No. 734.687-042), Production Table Worker (DOT Title No. 739.687-182), and Touch-Up Screener, Printed Circuit Board (DOT Title No. 726.684-110).  (Tr. 609, 612).

The VE testified that the occupations only required gross manipulation and no fingering.  (Tr. 607-08.)

The VE's statement that the occupations did not require fine manipulation and required only occasional handling is in direct conflict with the information in the DOT.  The DOT either says fingering is required occasionally (up to 1/3 of the time), frequently (1/3 to 2/3 of the time), or constantly (up to 2/3 of the time), and that handling is required either frequently or constantly.  (Pl.'s Br. 11.)  Simply stated, all of the positions named by the VE require fingering and more than occasional handling.  Therefore the information provided by the VE is in direct conflict with the information in the DOT.

Moreover, his testimony is in direct conflict with the ALJ's finding of Plaintiff's RFC.  The ALJ found that the Plaintiff is unable to perform fine motor skills (fingering) with either hand.  (Tr. 361-62.)  Moreover, the ALJ found that Plaintiff is restricted to only occasional handling.  *Id.*  Therefore, according to the DOT, Plaintiff is unable to perform the six occupations the VE named because the occupations require fine manipulating and handling at least frequently or constantly.

The VE's testimony regarding the exertional level of the 15 "Inspection and Quality Control" jobs is facially different from that indicated in the DOT.  The VE's testimony also creates a conflict between the ALJ's determination of Plaintiff's RFC and the description of the jobs in the DOT.  Therefore, there is a direct conflict between the VE's testimony and the information in the DOT.

### ALJ's Failure to Resolve Conflict

Plaintiff argues that because the ALJ failed to resolve the conflict between the VE's testimony and the DOT, the ALJ's ruling is unsupported by substantial evidence.  (Pl.'s Br. 12.)  The Court disagrees: the ALJ's failure to resolve the conflict does not, in and of itself, render the ALJ's

ruling unsupported by substantial evidence.  When there is a conflict between the VE's testimony and the DOT, S.S.R. 00-4p imposes a duty on the ALJ to resolve the conflict before relying on the evidence of the VE.  S.S.R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  It states that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.*  Moreover S.S.R. 00-4p states that in these situations, the adjudicator will:

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.*  It is important to note that this affirmative responsibility only arises when the conflict is apparent or when the conflict should have been apparent.  *See Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

In executing this duty, the ALJ asked the VE the following question:

ALJ:   Are you consistent with the DOT in your testimony?

VE:    Yes, Your Honor.

(Tr. 609).  Given that the VE answered the ALJ's question in the affirmative, the ALJ was unaware of the conflict between the VE's testimony and the DOT.  Plaintiff argues that he brought the conflict to the attention of the ALJ in his final written arguments.  (Pl.'s Br. 14.)  However, the ALJ stated in his findings that he never received the arguments.  (Tr. 353.)  Therefore, the ALJ never knew about the conflict.  Because there was no apparent conflict between the VE's testimony and the DOT, the ALJ had no duty to inquire about a reasonable explanation for the conflict.  Therefore,

the ALJ's ruling is not unsupported by substantial evidence simply because he failed to resolve the conflict between the VE's testimony and the DOT.

### ALJ's Reliance on VE's Testimony

Plaintiff also argues that because the ALJ relied on the VE's erroneous testimony, the ALJ's ruling is not supported by substantial evidence. The Court agrees. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). Morever, the Fifth Circuit in *Carey v. Apfel* held that an erroneous characterization of a job's exertional requirements or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony and that an unexplained discrepancy between the ALJ's RFC finding and the definition of the identified jobs in the DOT would necessitate remand. *See Carey*, 230 F.3d at 147.

As stated above, the VE's testimony regarding the 15 occupations of "Inspection and Quality Control" is in direct conflict with the DOT and it is in direct conflict with the ALJ's ruling on the Plaintiff's RFC. Moreover, the VE testified that there was no such conflict. (Tr. 609.) His testimony was, therefore, erroneous. The ALJ then relied on this testimony in making his determination that Plaintiff can still perform other work existing in the national economy. (Tr. 369.) Thus, because the ALJ relied on the VE's incorrect testimony, his finding is not supported by substantial evidence.

Because the ALJ's decision was based upon erroneous testimony from the VE, the ALJ's decision was erroneous and not based upon substantial evidence. Thus the Commissioner did not meet his burden; he did not show Plaintiff could perform jobs in the local or national economy.

Plaintiff was therefore prejudiced and as such, the Court recommends that the District Court reverse the ALJ's decision.

## Remedy

Having determined that the decision of the ALJ should be reversed, the Court must now determine whether the case should be remanded for further administrative proceedings or, as Plaintiff urges, for calculation and payment of disability benefits. The Court finds that remand for further administrative proceedings is appropriate in this case.

The Court may direct an award of benefits where the undisputed evidence clearly establishes that a claimant is entitled to relief. *Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir. 1986). "[A] remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Furthermore, a court may remand a case for payment of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). However, in this case, the evidence is still disputed, and it does not clearly establish that Plaintiff is entitled to relief. This Court's finding that the ALJ's decision was not based on substantial evidence does not necessarily mean that the evidence establishes disability without a doubt. Upon hearing that there is a conflict between the VE's testimony and the DOT and upon requiring an explanation, the ALJ may still conclude that Plaintiff is not entitled to relief. Were this Court to award benefits to Plaintiff, this Court would be substituting its own judgment for that of the ALJ, which it cannot do. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) (holding

that district courts cannot  reweigh the evidence, try the issues de novo, or substitute its own judgment for that of the ALJ).

The ALJ determined that Plaintiff is incapable of fingering and is limited to occasional handling, yet according to the DOT, all of the "Inspection and Quality Control" occupations require some fingering and more than occasional handling.  As such, remand for further administrative proceedings is proper.

<u>**Recommendation**</u>

This Court recommends that the decision of the Commissioner be vacated and that the case be remanded to the Commissioner for further proceedings.

It is so recommended, July 28, 2009.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).